DORON WEINBERG (CA SBN 046131)
WEINBERG & WILDER
523 Octavia Street
San Francisco, CA 94102
Telephone:    (415)   431-3472
Facsimile:     (415)   552-2703
doronweinberg@aol.com
Attorneys for Defendant
GARY W. RODRIGUES

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 01-00078 DAE |
| ) | |
| Plaintiff, ) | **DEFENDANT GARY W. RODRIGUES'** |
| ) | **MEMORANDUM ON RESENTENCING** |
| vs. ) | **FOLLOWING *AMELINE* REMAND** |
| ) | |
| GARY W. RODRIGUES, et. al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

    Defendant Gary W. Rodrigues comes before the Court for resentencing following a remand by the United States Court of Appeals for the Ninth Circuit pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005).

    The legal principles governing the Court's reconsideration of Defendant's sentence on remand are set forth in the memorandum filed on behalf of co-defendant Robin Sabatini and are incorporated herein. Accordingly, the instant memorandum will address only the question of the appropriate sentence to be imposed upon Defendant Rodrigues.

    The essential question presented is whether, in view of the fact that the Sentencing Guidelines are advisory and not mandatory, this Court should modify Defendant's sentence upon consideration of the factors enumerated in 18 U.S.C. § 3553. Defendant respectfully submits that

modification to a significantly lesser sentence is appropriate in this case.

§ 3553 identifies two sets of factors to be considered in determining a sentence in a particular case. Subsection (a)(1) focuses on the nature and circumstances of the offense and the history and characteristics of the defendant and subsection (a)(2) enumerates factors involving the purposes of sentencing.

Addressing first the factors identified in subsection (a)(2), it is clear that those factors would be satisfied by a sentence significantly less severe than that previously imposed upon Defendant. Given Defendant's age and his statutory ineligibility to hold a position in which he could commit similar crimes, there is clearly no need to protect the public from his future conduct. Nor does Defendant require "educational or vocational training, medical care, or other correctional treatment."

Although admittedly abstract and somewhat subjective, the purposes of reflecting the seriousness of the offense and of affording adequate deterrence can certainly be served by a sentence substantially lower than the 64-month sentence imposed by the Court. In addition to his removal from office, personal disgrace, conviction as a felon and monetary penalties totaling $428,103.63, a term of imprisonment significantly less than a 64-month sentence would both reflect the seriousness of the offense and afford adequate deterrence.

A significant reduction in Defendant's sentence is even more clearly appropriate when taking into consideration "the nature and circumstances of the offense and the history of characteristics of the defendant," as required under § 3553(a)(1).

As the Court is well aware, prior to the offenses involved in this case Defendant lived a completely law-abiding life without any criminal involvement. Indeed, his was a life of service

to the United Public Workers Union ("UPW"), to the people of Hawaii, and to his family. The testimony at trial, and the uncontroverted public record, establishes that Defendant was an effective and highly-skilled leader, whose management of the UPW brought a ten-fold increase in wages and benefits and enormous improvements in working conditions, for its members. In addition, as the evidence and the public record reflect, and the Court is undoubtedly aware, Defendant gave tirelessly of his time and energy on a volunteer basis to his union, and its International, to public welfare groups and organizations and to local and state government agencies.

Most of all, Defendant is a devoted family man as both father and son. He raised his daughters as a single parent virtually from infancy, helping one to become a police officer and the other an accountant. His principal residence remains on the property on which he grew up, which he now shares with his elderly parents, whom he assists and supports.

Indeed, it was his devotion to his family that impelled Defendant to make the error of judgment which led him to commit these offenses. He saw – but apparently misperceived – an opportunity to assist members of his family financially. The record is clear that he himself did not seek or gain any benefit from the money received by his daughter, some of which was used to benefit other members of the family.

In assessing the circumstances of the offense, it is important to bear in mind that Defendant's motivation was to help his family and he believed he was doing so not at the expense of his union, but based on voluntary payments from insurance carriers. It is also significant that, as this Court found, he made no false statements or representations in order to obtain this financial benefit for his family. Rather, he deprived the union of his honest services

by directing the financial opportunity to his family, rather than the union.[1]

The undue severity of Defendant's sentence is further reflected by comparison to the treatment of others. Although the government has argued that Defendant executed a corrupt scheme, none of the persons involved in HDS, VEBAH or MAP, necessary and knowing participants in this corrupt scheme, were prosecuted or paid any price, personal or financial. Most strikingly, Peter Wong, the former head of PGMA, who, in addition to participating in Defendant's scheme, caused $18,000,000 in losses, failed to pay millions of dollars in taxes and filed false reports with insurance regulators was sentenced to a term of imprisonment barely half of that imposed upon Defendant Rodrigues. Additionally, whereas Defendant Rodrigues has had his assets restrained and is required to pay his restitution and fine immediately, Mr. Wong has been ordered to pay his $7,500,000 restitution at the rate of several hundred dollars a month.

Defendant respectfully submits that there are no circumstances which could conceivably justify the imposition of a sentence upon Defendant greater than that imposed upon Peter Wong.

In light of the above considerations, Defendant urges the Court to resentence him to the term of 33 months imprisonment, and to allow his restitution to be paid in reasonable installments. Such a sentence would be appropriate under current sentencing guidelines.

As the Court will recall, Defendant's sentencing was principally based upon his conviction for money laundering, which provided for a base offense level of 20, plus 3 levels for

---

[1] In judging the culpability and seriousness of Defendant's conduct, it may be suggested that his receipt of kickbacks from the life insurance plan is an aggravating factor. But the fact is that Defendant neither requested nor required these kickbacks. As Herb Nishida testified unequivocally it was he, not Defendant, who initiated the payments as an expression of gratitude rather than as a *quid pro quo*.

the monetary amount involved and 2 levels for abuse of a position of trust,[2] even though this factor was included in the underlying offense. The resulting calculation yielded an adjusted offense level of 25, and a sentencing range of 57 to 71 months. The Court selected the middle of that range, or 64 months.

Since November 2001, however, the Sentencing Guidelines have eliminated the base term for money laundering, instead referring to the offense level for the underlying offense from which the laundered funds were derived, in this case fraud. This is certainly appropriate here where the money laundering consisted of nothing more than the deposit of the checks received from the scheme into a bank account.

Under the fraud guidelines that were in effect at the time of Defendant's sentencing, the base offense level was 6 and the adjustment for the amount of loss (between $200,000 and $400,000) was 12, yielding a total offense level of 18. There would also be an adjustment of 2 levels, pursuant to § 2S1.1 for conviction under 18 U.S.C. § 1956. No adjustment for abuse of position of trust applies, since the abuse of trust is inherent in Defendant's underlying offense of honest services fraud.

Nor is an adjustment for the number of victims appropriate since the victim, if any, of the honest services fraud was the UPW. Defendant's Offense Level would therefore be 20, with a Criminal History Category I, sentencing range of 33 to 41 months. A sentence of 33 months, or

---

[2] Defendant submits that even apart from the § 3553 factors, his sentence must be adjusted by elimination of this 2 level enhancement for abuse of a position of trust. Under Guidelines § 3B1.3, an adjustment is appropriate only if the abuse of trust "significantly facilitated the commission or concealment of the offense." There can be no reasonable contention that Defendant abused a position of trust *in connection with* the money laundering offense, and the enhancement is therefore inapplicable.

roughly half the current sentence, would clearly be appropriate.

## CONCLUSION

For the foregoing reasons, the Court is respectfully urged to modify Defendant's sentence to impose a term of imprisonment of 33 months and to provide that restitution be paid at the rate of $1000.00 a month.[3]

Respectfully submitted,

WEINBERG & WILDER

Dated: October 15, 2007      /s/ Doron Weinberg
                             DORON WEINBERG

                             Attorney for Defendant
                             GARY W. RODRIGUES

---

[3] In anticipation of the restitution order, Defendant's assets have been withheld from him for more than five years, resulting in the loss of several hundred thousand dollars of benefit. As the Court is aware, Defendant's funds do not derive from the scheme of which he was convicted, but rather from his salary and benefits. Defendant respectfully requests, therefore, that the funds be released and that a monthly payment plan be ordered for restitution.